Nos. 2--96--1080, 2--96--1081, 2--96--1082 cons.

                                    

_________________________________________________________________

                                 IN THE

                                    

                       APPELLATE COURT OF ILLINOIS

                                    

                             SECOND DISTRICT

__________________________________________________________________

MISSOURI PACIFIC RAILROAD        )  Appeal from the Circuit Court

COMPANY, on its own Behalf and   )  of Du Page County.

as Successor in Interest to      )

Chicago And Eastern Illinois     )

Railroad Company and to Texas    )  No. 94--MR--0198

And Pacific Railway Company and  )

Their Subsidiary and             )

Affiliated Companies,            ) 

                                 )

     Plaintiff-Appellee,         )

                                 ) 

v.                               )      

                                 )

INTERNATIONAL INSURANCE          )

COMPANY, Indiv., and as          )

Successor to International       )

Surplus Lines Insurance          )

Company, North River Insurance   )

Company, and United States       )

Fire Insurance Company,          )

                                 )

     Defendant-Appellant         )

                                 )  

(Admiral Insurance Company,      )  

et al., Defendants).             )

__________________________________

MISSOURI PACIFIC RAILROAD        )

COMPANY, on its own Behalf and   )

as Successor in Interest to      )

Chicago And Eastern Illinois     )

Railroad Company and to Texas    )

And Pacific Railway Company and  )

Their Subsidiary and             )

Affiliated Companies,            )

                                 )

     Plaintiff-Appellee,         )

                                 )

v.                               )

                                 )

FEDERAL INSURANCE COMPANY; and   )

COMMERCIAL UNION INSURANCE       )

COMPANY, on Behalf of C.E.       )  

Heath Compensation And           )

Liability Insurance Company,     ) 

as Successor to Certain          )

Interests of Employers' Surplus  )

Lines Insurance Company,         )

                                 )

     Defendants-Appellants       )

                                 )

(Admiral Insurance Company,      ) 

et al., Defendants).             )

__________________________________

                                 )

MISSOURI PACIFIC RAILROAD        )

COMPANY, on its own Behalf and   )

as Successor in Interest to      )

Chicago And Eastern Illinois     )

Railroad Company and to Texas    )

And Pacific Railway Company and  )

Their Subsidiary and             )

Affiliated Companies,            )

                                 )

     Plaintiff-Appellee,         )

                                 )

v.                               )

                                 )

CENTURY INDEMNITY COMPANY,       )

as Successor to Cigna            )

Specialty Insurance Company,     )

f/k/a California Union           )

Insurance Company, and Central   )

National Insurance Company of    ) 

Omaha,                           )  Honorable

                                 )  Bonnie M. Wheaton,

     Defendant-Appellant.        )  Judge, Presiding.

__________________________________________________________________

     JUSTICE BOWMAN delivered the opinion of the court:

     This appeal involves an insurance coverage dispute between

plaintiff, Missouri Pacific Railroad Company (Missouri Pacific),

and four of its excess general liability insurance carriers,

Commercial Union Insurance Company (Commercial Union), Federal

Insurance Company (Federal), International Insurance Company

(International), and Century Indemnity Company (Century Indemnity)

(collectively, the insurers).

     The following facts are taken from the record.  Additional

relevant facts will be discussed as they relate to the issues on

appeal.

     Thousands of current and former Missouri Pacific employees

have brought claims against Missouri Pacific seeking damages for

hearing loss allegedly caused by continuous and repeated on-the-job

exposure to unsafe levels of noise.  In addition, hundreds of

current and former Missouri Pacific employees have brought claims

against Missouri Pacific seeking damages for asbestos-related

injuries allegedly caused by continuous and repeated exposure to

unsafe levels of asbestos over the course of their employment.  The

underlying claimants' work histories span over 73 years, starting

in the 1920s.

     Between 1934 and 1986, Missouri Pacific maintained self-

insured retentions (SIRs).  Missouri Pacific apparently carried no

insurance prior to 1934.  Between 1957 and 1986, Missouri Pacific

purchased certain insurance policies from the insurers (the

policies).  The total SIRs underlying the policies at issue is over

$67 million.

     The policies at issue are identical in most respects and

warrant the same interpretation.  Under the policies, the insurers

agreed to indemnify Missouri Pacific for "all sums" caused by an

"occurrence":

     "[The Insurer] will indemnify [Missouri Pacific] for all sums

     which [Missouri Pacific] shall become legally obligated to pay

     as damages and expenses (all as hereinafter defined as

     included within the term 'Ultimate Net Loss') because of

     personal injury or property damage, caused by an occurrence

     and arising out of operations necessary to the conduct of the

     business of the Insured."

"All sums" are further defined as "damages" in the "ultimate net

loss" provision:

     " 'Ultimate net loss' means the total of all damages and

     expenses, as defined below, with respect to each occurrence;

     (a) 'damages' means all sums which [Missouri Pacific] becomes

     legally obligated to pay as damages, whether by reason of

     adjudication or settlement, because of personal injury or

     property damage *** (B) 'expenses' means all reasonable

     expenses incurred by [Missouri Pacific] in the investigation,

     settlement, and defense of any claim or suit seeking such

     damages, including hospital, medical, and funeral charges paid

     as a consequence of any occurrence hereunder *** and legal

     expense (including attorney's fees and court costs) ***."

The policies also define the term "occurrence":

     " 'Occurrence' means (a) an accident, or (b) a continuous or

     repeated exposure to conditions which result in personal

     injury or property damage which is neither expected nor

     intended from the stand point of [Missouri Pacific], if such

     accident or such personal injury or property damage occurs

     while this policy is in force."

The other relevant provision in the policies is the "Retained

Limit-Other Insurance" clause:

     "Retained Limit--Other Insurance.  Underwriters shall be

     liable only for that amount of ultimate net loss resulting

     from any one occurrence which is in excess of

     (A)  the amount stated in the Schedule as the 'Retained

     Limit', or

     (B)  the amount of the applicable limit or limits of liability

     of other insurance against liability as insured hereby carried

     by the Assured or on its behalf, if the amount of such limit

     or limits or the aggregate thereof is greater than the

     applicable retained limit."

     Missouri Pacific filed a declaratory judgment and contract

action against the insurers.  Missouri Pacific sought a declaration

that it was entitled to indemnification from the insurers for the

noise-induced hearing loss (NIHL) and asbestos-exposure claims

brought against it.  Missouri Pacific alleged that the NIHL claims

and asbestos-exposure claims each arose from one proximate,

uninterrupted, and continuing cause.  Missouri Pacific alleged that

some amount of damage occurred in each policy between 1957 and

1986; thus, it was entitled to select the policy period that would

provide full indemnification for "all sums" incurred as a result of

the claims.  Missouri Pacific also alleged that reimbursement of

the claims was subject to the payment of only one SIR per claim

type.  Missouri Pacific alleged that it paid over $79 million in

connection with the NIHL claims and $7.2 million in connection with

the asbestos-exposure claims.

     On April 29, 1996, Missouri Pacific moved for summary judgment

asserting, inter alia, that the NIHL claims and asbestos-exposure

claims each arose from a single occurrence for purposes of

insurance coverage and thus that it need satisfy only one SIR prior

to seeking reimbursement for each claim type.  Missouri Pacific

also moved for summary judgment on the basis that the insurers were

fully liable (up to the policies' limits of liability) for "all

sums" incurred as indemnity in defense costs arising from the

underlying NIHL and asbestos-exposure claims.     The insurers'

response to Missouri Pacific's motion for summary judgment was

twofold.  First, they argued that the NIHL claims could be

allocated with a reasonable degree of scientific certainty; as a

result, the policies were only responsible for the amount of

hearing loss which occurred during the particular policy period. 

Second, they argued that, even if Missouri Pacific could not

demonstrate with scientific certainty the amount of damage in each

policy period, a pro rata, time-on-the-risk allocation method was

proper because it was the only approach consistent with the

language in the policies and Illinois law.  

     The insurers also moved for summary judgment on the ground

that Missouri Pacific could not implicate the policies unless

Missouri Pacific exhausted all applicable SIRs.  The insurers

maintained that horizontal exhaustion was appropriate when the

policyholder was in effect self-insured over several policy

periods.  In response, Missouri Pacific argued that self insurance

did not constitute "other insurance" and therefore that the

principles of horizontal exhaustion did not apply.  

     On July 18, 1996, the trial court granted Missouri Pacific's

motion for summary judgment.  The court found as a matter of law

that all NIHL claims arose from a single occurrence, that all

asbestos-exposure claims arose from a single occurrence, and that

Missouri Pacific must only satisfy one SIR for each occurrence. 

The trial court also declared that the policies were fully liable

for the entire loss subject only to the policies' limits of

liability.  

     The trial court also denied the insurers' motions for summary

judgment.  The court found that SIRs were not the equivalent of

primary insurance coverage or "other insurance" and, thus, that

horizontal exhaustion principles did not apply.  

     On July 26, 1996, this court issued its decision in Outboard

Marine Corp. v. Liberty Mutual Insurance Co., 283 Ill. App. 3d 630

(1996).  On August 5, 1996, the insurers filed a motion for

clarification and, in the alternative, for reconsideration of the

trial court's July 18, 1996, rulings.  The insurers sought

clarification of the court's determination of the appropriate

method of allocation.  The insurers also asked the court to

reconsider its ruling in light of our decision in Outboard Marine. 

Based on their reading of Outboard Marine, the insurers maintained

that the trial court should apply a pro rata, time-on-the-risk

allocation method.  

     On August 12, 1996, the trial court denied the motion for

clarification and reconsideration and entered a written order which

granted Missouri Pacific's motion for summary judgment on the

"occurrence" and  "all sums" issues and denied the insurers'

motions for summary judgment based on horizontal exhaustion. 

However, the court certified two questions relating to the "all

sums" and horizontal exhaustion issues pursuant to Supreme Court

Rule 308(a) (155 Ill. 2d R. 308(a)).  Defendants filed separate

applications for leave to appeal to this court pursuant to Supreme

Court Rule 308(b) (155 Ill. 2d R. 308(b)).  We granted the

applications and consolidated all appeals.

Discussion

     The two questions certified by the trial court are:

          "1.  Whether the 'all sums' rule set forth by the

       Illinois Supreme Court in Zurich Ins. Co. v. Raymark

       Industries, Inc., 118 Ill. 2d 23 (1987) or the pro-rata by

       time-on-the-risk theory articulated in Outboard Marine Corp.

       v. Liberty Mutual Insurance Co., No. 2-95-0950 (Ill. App. 2d

       Dist. July 26, 1996) governs allocation of coverage where

       the Circuit Court has found that noise-induced hearing loss

       claims constitute a single occurrence, and further has found

       that asbestos-exposure claims constitute a single

       occurrence, and 

          2.   Whether the insured must exhaust all self-insured

       retention amounts for each period of insurance coverage

       before looking to the insurer for coverage where the noise-

       induced hearing loss claims and the asbestos-exposure claims

       span several different periods of coverage with different

       self-insured retention amounts."

          Procedurally, these questions originate from both the denial

and grant of the parties' respective motions for summary judgment. 

Summary judgment is appropriate when there is no genuine issue of

material fact and the moving party's right to judgment is clear and

free from doubt.  Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165

Ill. 2d 107, 113 (1995).  All evidence is construed in the light

most favorable to the nonmoving party and strictly against the

moving party.  Letsos v. Century 21-New West Realty, 285 Ill. App.

3d 1056, 1062 (1996).  In cases involving summary judgment, we

conduct a de novo review of the evidence in the record.  Espinoza,

165 Ill. 2d at 113.  With this in mind, we now turn to the

questions before this court.

I

          The first question we must address is whether the "all-sums"

allocation rule in Zurich Insurance Co. v. Raymark Industries,

Inc., 118 Ill. 2d 23 (1987), or the pro rata, time-on-the-risk

theory articulated in Outboard Marine Corp. v. Liberty Mutual

Insurance Co., 283 Ill. App. 3d 630 (1996), governs the allocation

of coverage in the present case.  In doing so, we are to accept the

trial court's finding that the NIHL and asbestos-exposure claims

each constitute a single occurrence.

     The trial court granted Missouri Pacific's motion for summary

judgment on this question.  Relying on Zurich, 118 Ill. 2d 23, the

court ruled that the insurers were liable for all sums, up to the

limits of their individual policies, for all injuries related to

each occurrence that were triggered during the relevant policy

period.

     The policies state:

       "[The Insurer] will indemnify [Missouri Pacific] for all

       sums which [Missouri Pacific] shall become legally obligated

       to pay as damages and expenses (all as hereinafter defined

       as included within the term 'Ultimate Net Loss') because of

       personal injury or property damage, caused by an occurrence

       and arising out of operations necessary to the conduct of

       the business of the Insured."  (Emphasis added.)

       The policies also define the term "occurrence":

       " 'Occurrence' means (a) an accident, or (b) a continuous or

       repeated exposure to conditions which result in personal

       injury or property damage which is neither expected nor

       intended from the stand point of [Missouri Pacific], if such

       accident or such personal injury or property damage occurs

       while this policy is in force."  (Emphasis added.)

          The insurers argue that the foregoing provisions promise to

indemnify Missouri Pacific for all sums arising from personal

injuries that occur during the policy period.  According to the

insurers, a genuine issue of material fact exists regarding whether

NIHL can be measured and allocated to particular policy periods,

and thus whether Missouri Pacific's damages can be allocated among

the insurers.  The insurers therefore argue that the trial court

erred in holding that they were liable for all sums, up to the

limits of their individual policies, for all injuries related to

each occurrence that were triggered during the relevant policy

period.  The insurers further argue that, in the event that

Missouri Pacific's total NIHL damages cannot be allocated to

specific policy periods, then the trial court should apply the pro

rata, time-on-the-risk allocation method adopted in Outboard

Marine.

     In response, Missouri Pacific argues that, under the "all

sums" provisions of the policies, each insurer is fully liable for

Missouri Pacific's losses without proration.  According to Missouri

Pacific, the insurers must indemnify it, up to each triggered

policy's limit of liability, for "all sums" of damages which it

becomes obligated to pay because of NIHL or asbestos injury caused

by an occurrence.  Missouri Pacific urges this court to impose

joint and several liability on the insurers, regardless of the

specific policy periods during which the insurers actually provided

coverage.

     The construction of an insurance policy's provisions is a

question of law.  Outboard Marine, 283 Ill. App. 3d at 649.  To

ascertain the meaning of the policy's words and the intent of the

parties, the court must construe the policy as a whole with due

regard to the risk undertaken, the subject matter that is insured,

and the purposes of the entire policy.  Outboard Marine, 283 Ill.

App. 3d at 649; see Western Casualty & Surety Co. v. Brochu, 105

Ill. 2d 486, 493 (1985).  The terms of an insurance policy must be

read according to their plain and ordinary meaning, and a court

should not search for an ambiguity where there is none.  Allstate

Insurance Co. v. Smiley, 276 Ill. App. 3d 971, 977 (1995).  If the

words in a policy are susceptible to more than one reasonable

interpretation, they are ambiguous and will be construed in favor

of the insured and against the insurer that drafted the policy. 

United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.,

144 Ill. 2d 64, 74 (1991).  

     Applying these principles to the case at bar, we conclude

that the policies only indemnify Missouri Pacific for personal

injuries that occur during the policy period.  The insurers agreed

to indemnify Missouri Pacific "for all sums which [Missouri

Pacific] shall become legally obligated to pay as damages and

expenses *** because of personal injury *** caused by an

occurrence."  An occurrence is "an accident, or *** a continuous

or repeated exposure to conditions which result in personal injury

*** if such accident or such personal injury *** occurs while this

policy is in force."  (Emphasis added.)  We read this language as

providing that the sums the insurers are obligated to pay must be

on account of personal injuries that occur during the policy

period.  

     Missouri Pacific would have us read the policies as requiring

the insurers to indemnify it for all NIHL damages, regardless of

when the damages occurred.  This reading, however, fails to give

effect to the plain and ordinary meaning of the policies' language

when read in context.  By focusing on the "all sums" language,

Missouri Pacific ignores the limitation that the sums the insurers

agreed to pay must be on account of personal injuries arising from

an occurrence, which is defined as an accident or personal injury

which occurs while the policy is in force.

     Our recent decision in Outboard Marine is instructive on this

point.  In that case, we construed policy language similar to the

language in this case.  Like Missouri Pacific, the insured in that

case argued that the insurers agreed to pay "all sums," regardless

of when the injuries occurred.  As in this case, we disagreed with

the insured and held that "the sums the insurer is obligated to

pay must be on account of property damage arising out of an

occurrence during the policy period."  See Outboard Marine, 283

Ill. App. 3d at 642.   

     Given that the policies provide that the sums the insurers

are obligated to pay must be on account of personal injuries that

occur during the policy period, the question becomes whether the

NIHL damages can be allocated to particular policy periods.  At

this stage of the litigation, we believe it is premature for us to

decide whether they can or cannot.  We agree with the insurers

that a genuine issue of material fact exists as to whether

Missouri Pacific's NIHL damages can be measured and allocated to

specific time periods within a reasonable degree of scientific

certainty.  For instance, in its memorandum in opposition to

Missouri Pacific's motion for summary judgment, International

submitted the affidavit of Dr. William Clark, who stated that NIHL

occurs only during active exposure to excessive noise in the

workplace.  In the same memorandum, International attached the

expert witness disclosure statement of Dr. Robert Dobie, who

stated that NIHL injuries can be measured to specific periods of

time.  Also, in their motion for clarification and, in the

alternative, for reconsideration of the trial court's ruling

granting Missouri Pacific's motion for summary judgment, the

insurers repeated that NIHL damages could be apportioned among

policy periods, and they directed the court's attention to the

expert witnesses who would testify as such.  In that same motion,

the insurers also attached the American National Standard

Institute's model upon which the allocation of NIHL is based. 

Collectively, this evidence creates a genuine issue of material

fact as to whether NIHL damages can be measured and allocated to

specific periods of time.  

     Parenthetically, we note and dismiss as meritless Missouri

Pacific's argument that evidence concerning the allocation of NIHL

damages to particular policy periods was never presented to the

trial court.  Our review of the record, as explained in the

preceding paragraph, reveals that this evidence was before the

trial court when it made its rulings and is currently part of the

record on appeal.

     We therefore hold that the trial court erred in granting

Missouri Pacific summary judgment on the issue of allocation, and

we remand the matter for proceedings consistent with the decision

we reach today.  On remand, the parties should be given the

opportunity to present evidence that NIHL may (or may not) be

measured and allocated, within a reasonable degree of medical and

scientific certainty, to particular policy periods.  

     In the event that NIHL cannot be measured and allocated to

particular policy periods, the trial court should apply the pro

rata, time-on-the-risk allocation of damages approach used in

Outboard Marine.  See Outboard Marine, 283 Ill. App. 3d at 645. 

In Outboard Marine, the insured maintained excess insurance

policies which contained language nearly identical to that in the

present case.  The trial court found that a single continuous

occurrence--the insured's contamination of a lake over a 23-year

period--resulted in an unallocable loss which implicated

successive policy periods.  We held that in such a situation the

best method of damage allocation is a pro rata, time-on-the-risk

allocation.  See Outboard Marine, 283 Ill. App. 3d at 642-45.  

     Similarly, this case involves a single continuous occurrence

which may result in an unallocable loss implicating successive

policy periods.  If it is determined on remand that the NIHL

damages are unallocable, then the best method of damage

allocation, as in Outboard Marine, is a pro rata, time-on-the-risk

allocation.  Outboard Marine, 283 Ill. App. 3d at 643-45.

     Moreover, we note that Missouri Pacific's reliance on Zurich,

118 Ill. 2d 23, is misplaced.  In Zurich, the court applied a

"triple trigger" theory to determine which primary insurance

policies were implicated by asbestos-related personal injuries. 

The court held that such policies were triggered at the initial

exposure, when the disease manifested itself, and at any interim

time when the claimant manifested some sickness.  Zurich, 118 Ill.

2d at 44; see Outboard Marine, 283 Ill. App. 3d at 641.  The

insurer then urged the court to adopt the pro rata approach in

Insurance Co. of North America v. Forty-Eight Insulations, Inc.,

633 F.2d 1212 (6th Cir. 1980), aff'd on reh'g 657 F.2d 814 (6th

Cir. 1981), to allocate the indemnity and defense costs of each

claim among the triggered policies.  In Forty-Eight Insulations, 

          "the court held that the insurers' obligations under

       their respective policies were triggered only by a

       claimant's exposure to asbestos during a policy period. 

       From this premise, that court concluded that the exposure

       theory provided a reasonable means of allocating the costs

       of defense and indemnification among the triggered policies

       based on the number of years of exposure."  Zurich, 118 Ill.

       2d at 57.

       However, the court in Zurich had already held that a policy was

triggered if the claimant suffered bodily injury or sickness or

disease.  Accordingly, having rejected the premise underlying the

pro rata allocation approach in Forty-Eight Insulations, Zurich

concluded that the appellate court did not err "insofar as it

declined to order a pro rata allocation of defense and indemnity

obligations among the triggered policies."  Zurich, 118 Ill. 2d at

57.

     We read nothing in Zurich as precluding the application of the

pro rata, time-on-the-risk allocation method announced in Outboard

Marine to the case at bar.  Zurich's rejection of a pro rata

approach was based on the narrow facts of the case before it,

namely, that it had rejected the trigger analysis set forth in

Forty-Eight Insulations.  The court did not adopt a general rule

forever precluding the application of a pro rata approach.  As we

explained in Outboard Marine, such an approach is appropriate

where, as here, a single continuous occurrence results in an

unallocable loss implicating successive policy periods.

     Our answer, then, to the first certified question is twofold. 

First, the parties should be given the opportunity to present

evidence that NIHL may (or may not) be measured and allocated,

within a reasonable degree of medical and scientific certainty, to

particular policy periods.  If NIHL cannot be allocated, then the

court should apply the pro rata, time-on-the-risk allocation method

adopted in Outboard Marine.

     Finally, we add that the parties' arguments regarding the

first certified question almost exclusively focused on the NIHL

claims.  Our consideration of the first question tracts this

approach.  However, our reasoning applies equally to the NIHL

claims and the asbestos-exposure claims.      

   II

     The second question we must address is whether Missouri

Pacific must exhaust all its SIRs for each period of insurance

coverage before looking to the insurers for coverage, where the

NIHL claims and the asbestos-exposure claims span several different

periods of coverage with different SIR amounts.  This question has

its origins in the insurers' motions for summary judgment, wherein

the insurers asserted that Missouri Pacific could not implicate the

policies until it exhausted all SIRs.  The trial court denied the

motions.  Relying on USX Corp. v. Liberty Mutual Insurance Co., 269

Ill. App. 3d 233 (1994), the court reasoned that Missouri Pacific's

SIRs did not equal "other insurance" and, thus, that the principles

of horizontal exhaustion did not apply.  The court accordingly held

that Missouri Pacific must exhaust only one SIR per occurrence. 

     The insurers maintain that the trial court erred in denying

their motions for summary judgment.  Relying principally on United

States Gypsum Co. v. Admiral Insurance Co., 268 Ill. App. 3d 598

(1994), they assert that Missouri Pacific must horizontally exhaust

all available underlying coverage, including SIRs, before it may

look to coverage under the policies. The insurers base their

argument on two general grounds: (1) the distinct and unique nature

of excess insurance coverage; and (2) the plain language of the

policies.  According to the insurers, each ground constitutes an

independent basis on which to apply the principles of horizontal

exhaustion.  

    A

     The insurers first argue that the principles of horizontal

exhaustion apply because of the distinct and unique nature of

excess insurance coverage.  According to the insurers, horizontal

exhaustion applies in all cases in which the insured maintains

excess insurance, and it is irrelevant if the underlying coverage

is primary insurance, fronting policies, or SIRs.  The insurers

reason that to hold otherwise would blur the distinction between

primary and excess coverage and permit policyholders like Missouri

Pacific to manipulate the source of their recovery.

     This court recently explained the nature of excess coverage in

Outboard Marine:

       " 'Excess or secondary coverage is coverage whereby, under

       the terms of the policy, liability attaches only after a

       predetermined amount of primary coverage has been exhausted. 

       A second insurer thus greatly reduces his risk of loss. 

       This reduced risk is reflected in the cost of the policy.' " 

       (Emphasis in original.)  Outboard Marine, 283 Ill. App. 3d

       at 652, quoting Whitehead v. Fleet Towing Co., 110 Ill. App.

       3d 759, 764 (1982).

       Under Illinois law, all underlying coverage must be exhausted

before excess coverage may be reached.  United States Gypsum Co.,

268 Ill. App. 3d at 653-54; Illinois Emcasco Insurance Co. v.

Continental Casualty Co., 139 Ill. App. 3d 130, 133 (1985).  This

principle, commonly referred to as "horizontal exhaustion," is

required because excess coverage carries a smaller premium than

primary coverage due to the lesser risk insured.  Illinois Emcasco

Insurance Co., 139 Ill. App. 3d at 133.  

     In United States Gypsum Co., 268 Ill. App. 3d 598, Gypsum

filed a declaratory judgment action seeking coverage for asbestos

claims under 35 years of excess insurance policies.  At issue was

whether Gypsum was required to exhaust all available primary

coverage before seeking coverage from any policy that provided

excess coverage to any particular primary policy which was

triggered.  Some of this primary coverage included fronting

policies which effectively rendered Gypsum self-insured over

several excess policy periods.  United States Gypsum, 268 Ill. App.

3d at 651-52.  Because Gypsum was effectively self-insured over

several excess policy periods, the court stated that "the decision

on the primary exhaustion issue will determine whether Gypsum will

have to absorb only the amount of one triggered policy period

before seeking excess coverage or whether it must absorb multiple

periods, i.e., exhaust all triggered primary insurance, before

seeking coverage."  United States Gypsum, 268 Ill. App. 3d at 652.

     The court held that Gypsum was required to exhaust all

applicable underlying coverage, including the fronting policies,

before reaching any excess insurance.  The court observed that

Gypsum was attempting to manipulate its coverage to "avoid

absorbing the cost resulting from its position as a self-insurer." 

United States Gypsum, 268 Ill. App. 3d at 653.  The court refused

to permit Gypsum to do so:

       "Adopting Gypsum's position permitting 'vertical exhaustion'

       would allow Gypsum to effectively manipulate the source of

       its recovery, avoiding difficulties encountered as the

       result of its purchase of fronting insurance and the

       liquidation of some of its insurers.  This would permit

       Gypsum to pursue coverage from certain excess insurers at

       the exclusion of others.  Such a practice would blur the

       distinction between primary and excess insurance (see

       Illinois Emcasco Insurance Co., 139 Ill. App. 3d at 133),

       and would allow certain primary insurers to escape unscathed

       when they would otherwise bear the initial burden of

       providing indemnification."  United States Gypsum, 268 Ill.

       App. 3d at 654.

          Our decision in Outboard Marine accords with the reasoning in 

United States Gypsum.  In Outboard Marine, we rejected the

policyholder's claim that it was not responsible for any damages

for the periods in which it carried no insurance.  We explained:

       " ' "A firm that fails to purchase insurance for a period

       *** is self-insuring for all the risk incurred in that

       period; otherwise it would be receiving coverage for a

       period for which it paid no premium.  Self-insurance is

       called 'going bare' for a reason." [Citation.]  Or as stated

       by Judge Wald in her concurring opinion in Keene, supra, "I

       just do not understand why an asbestos manufacturer, which

       has consciously decided not to insure itself during

       particular years of the exposure-manifestation period,

       should have a reasonable expectation that it would be exempt

       from any liability for injuries that were occurring during

       the uninsured period." [Citations.]' "  Outboard Marine, 283

       Ill. App. 3d at 643-44, quoting IMCERA Group, Inc. v.

       Liberty Mutual Insurance Co., 42 Cal. App. 4th 1754, 1792,

       50 Cal. Rptr. 2d 583, 607 (1996).

       Relying on United States Gypsum, we concluded that "[the

policyholder] cannot shift its responsibility for uninsured years

to its excess carriers."  Outboard Marine, 283 Ill. App. 3d at 642.

     Both United States Gypsum and Outboard Marine support the

proposition that the SIRs constitute primary coverage and thus that

Missouri Pacific must exhaust the SIRs before looking to the

insurers for coverage.  Like the fronting insurance in United

States Gypsum, which effectively constituted self-insurance, and

the period of no insurance in Outboard Marine, which is the

equivalent of self-insurance, the SIRs in the present case

constitute primary coverage.  To hold otherwise would allow

Missouri Pacific to manipulate the source of its recovery and avoid

the consequences of its decision to become self-insured, conduct we

found unacceptable in United States Gypsum and Outboard Marine.  As

such, Missouri Pacific must exhaust the SIRs before looking to the

insurers for coverage.  See United States Gypsum, 268 Ill. App. 3d

at 653-54.

    B

     The insurers next argue that the principles of horizontal

exhaustion apply because of the plain language of the policies. 

The insurers posit that the "other insurance" provisions of the

policies require that Missouri Pacific exhaust all primary

insurance policies, regardless of whether the policies extend over

multiple policy periods.  The insurers urge us to construe such

policies as encompassing SIRs.  Missouri Pacific argues, and the

trial court agreed, that SIRs operate as deductibles and are not

"other insurance" within the meaning of the policies.

     The policies contain the following provision, which is

typically referred to as an "other insurance" provision:

       "Retained Limit--Other Insurance.  Underwriters shall be

       liable only for that amount of ultimate net loss resulting

       from any one occurrence which is in excess of

       (A)  the amount stated in the Schedule as the 'Retained

       Limit', or

       (B)  the amount of the applicable limit or limits of

       liability of other insurance against liability as insured

       hereby carried by the Assured or on its behalf, if the

       amount of such limit or limits or the aggregate thereof is

       greater than the applicable retained limit."  (Emphasis

       added.)

       Most of the policies also contain the following provision, or one

substantially similar to it:

     "It is a condition precedent to coverage granted by this

     policy that in any instance in which the insured shall choose

     to self insure the amount of the retained limit or the

     underlying policy limits, the assured, as self-insurer has the

     same duties and obligations to underwriters on this policy as

     an underlying or primary insurer has to excess insureds under

     the standard ISO policy forms, even though this insurance is

     not on a standard ISO form."  

The policies provide, therefore, that Missouri Pacific is required

to exhaust other available insurance coverage before the insurers

are required to contribute.  The issue, therefore, is whether SIRs

constitute "other insurance."

     In United States Gypsum, the court held that horizontal

exhaustion was required because of the "other insurance" provision

contained in the excess policies.  See United States Gypsum, 268

Ill. App. 3d at 654.  The court noted that the provision clearly

set forth the policy's status as an excess policy "to all triggered

primary policies, regardless of whether they extend over multiple

policy periods or only one."  United States Gypsum, 268 Ill. App.

3d at 653.  The court then concluded that liability under an excess

policy would not attach until all underlying coverage was

exhausted.  United States Gypsum, 268 Ill. App. 3d at 653-54.  This

underlying coverage included Gypsum's fronting insurance, which the

court noted was the equivalent of self-insurance.  United States

Gypsum, 268 Ill. App. 3d at 652-53.

     In light of United States Gypsum, we conclude that Missouri

Pacific is required to exhaust one SIR per occurrence per policy

period.  For all practical purposes, Missouri Pacific's SIRs are

the equivalent of the fronting insurance involved in Gypsum.  As

such, the "other insurance" provision in the policies requires

Missouri Pacific to exhaust all underlying coverage, including its

SIRs, before it can seek coverage under the policies.  See United

States Gypsum, 268 Ill. App. 3d at 652-54. 

     Moreover, we briefly note that Missouri Pacific's reliance on

USX Corp. v. Liberty Mutual Insurance Co., 269 Ill. App. 3d 233

(1994), for the proposition that SIRs are not "other insurance," is

misplaced.  USX did not address the issue of horizontal exhaustion,

and it did not concern an "other insurance" provision that

specifically included SIRs.  

     In summary, we answer the second certified question as

follows:  Missouri Pacific must horizontally exhaust a full SIR per

occurrence per policy period before it may look to coverage under

the policies.

     There is one final matter we must address.  Commercial Union

also argues that it was entitled to summary judgment because there

is no justiciable controversy between it and Missouri Pacific. 

Commercial Union argues that the largest possible amount of alleged

damages Missouri Pacific seeks to apply to the policy period of the

policy issued by Commercial Union is an amount lower than the

inception point of the Commercial Union policy.  According to

Commercial Union, therefore, its policy can never be reached.

     We decline to address this argument.  This appeal comes before

us pursuant to Rule 308.  Under Rule 308, the trial court certifies

certain questions to be answered by this court.  We are restricted

in our review of Rule 308 appeals to the question certified (Lewis

v. Norfolk & Western Ry. Co., 269 Ill. App. 3d 483, 487 (1995)),

and we should not expand upon the certified question to answer

other issues the trial court might have included (McMichael v.

Michael Reese Health Plan Foundation, 259 Ill. App. 3d 113, 116

(1994)).  Here, the parties' motions for summary judgment addressed

a variety of issues, including the issues of single occurrence, all

sums, horizontal exhaustion, and Commercial Union's justiciability

argument.  The trial court only certified questions relating to the

issues of all sums and horizontal exhaustion.  We therefore decline

to address the issue of justiciability, given that it is not our

position to expand the scope of the certified questions to answer

other issues that might have been included.  See McMichael, 259

Ill. App. 3d at 116.  Of course, if our resolution of the questions

posed to us today affects the trial court's prior ruling on the

issue of justiciability (or, for that matter, on any issue in the

case), then the parties may ask the trial court to reconsider its

prior ruling.

Conclusion

     The questions have been answered, and the cause is remanded

for further proceedings consistent with this decision.  

     Questions answered; cause remanded.

     INGLIS and RATHJE, JJ., concur.