FOURTH DIVISION

DECEMBER 18, 1997
 

No. 1--96--2975

AMERICAN COUNTRY INSURANCE COMPANY,

Plaintiff-Appellee,

v.

THE HANOVER INSURANCE COMPANY,

Defendant-Appellant 

and

CHUBB INSURANCE COMPANY, SCARSDALE

DEVELOPMENT, LTD., and KATHLEEN POLIZZI, administrator of the estate of MARK POLIZZI, deceased,

Defendants.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 92--CH--11392

Honorable

Aaron Jaffe,

Judge Presiding.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

This appeal involves an insurance coverage dispute between 
plaintiff, American Country Insurance Company (American Country), and defendant, The Hanover Insurance Company (Hanover), concerning the priority of coverage for the second $1 million of a $4.5 million settlement in an underlying wrongful death action.  After cross-motions for summary judgment were filed and argued, the trial court entered judgment for American Country on the ground that its umbrella policy was excess over Hanover's policy.  For the following reasons, we affirm.

On October 1, 1990, Mark Polizzi was employed by Keystone Mechanical Industries, Inc. (Keystone) installing underground water utilities at the Edgewood Estates real estate development in Bartlett, Illinois.  The walls of the trench in which he was working collapsed on him, causing his death.  Scarsdale Development, Ltd. (Scarsdale) was the general contractor on the construction project and Keystone was the plumbing subcontractor.   At the time of Polizzi's injury, Keystone was insured by a Commercial Liability Policy issued by American Country.  Under this policy, which had a limit of $1 million for a single occurrence, Scarsdale was named as an additional insured.  Keystone was also covered by a $5 million Commercial Excess Policy, an umbrella policy, issued by American Country.  Although Scarsdale was not originally an additional insured under the Excess Policy, it was later added as an additional insured.  

The American Country Excess Policy included the following "Other Insurance" clause:

"Section 10 - OTHER INSURANCE

This insurance is excess over any other valid and collectible insurance, whether primary, excess, contingent, or any other basis, except other insurance written specifically to be excess over this insurance.  "Underlying insurance" is not other insurance."

In addition, Scarsdale was insured by Hanover's Homebuilders Commercial Lines Policy, which provided general liability coverage up to $1 million for each occurrence.  The policy's insuring agreement provides: 

"We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages."

The policy also contains the following provisions:

"IV.  
EXCESS INSURANCE

Under SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS PARAGRAPH "4.  Other Insurance" is hereby deleted and replaced with the following:

4.  Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A, B or D of this Coverage Part, our obligations are limited as follows:

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other 

basis."

Scarsdale was also covered by a Commercial Excess Umbrella Policy, with a $5 million limit for each occurrence, issued by Chubb Insurance Company (Chubb).  However, that policy is not involved in this appeal.

The underlying wrongful death action was settled for $4.5 million.  American Country, Hanover, and Chubb contributed to the settlement as follows:

$1 million American Country's Primary Commercial General                      Liability Policy (policy limit)

$1 million Hanover's Primary Homebuilders Policy

$1.25 million American Country's Commercial Excess Liability Policy

$1.25 million Chubb's Commercial Excess Umbrella Policy.

American Country and Hanover settled the underlying case without waiving their right to raise coverage issues between them. 

American Country filed a declaratory judgment action seeking a declaration that the American Country Excess Policy is excess to, and pays after, the Hanover Policy.  American Country and Hanover filed cross-motions for summary judgment.  Following argument, the trial court granted judgment for American Country.  The court reasoned that, considering the policies as a whole, American Country's policy was written to be excess over Hanover's policy.  

There is no dispute that American Country's Commercial General Liability Policy was the primary insurer and pays the first $1 million in settlement of the underlying case.  The sole issue is whether Hanover's Homebuilders Commercial Liability Policy or American Country's Excess Policy pays the second $1 million of the settlement.  In other words, is Hanover's commercial general liability policy excess over American Country's umbrella policy?

Hanover's position is that its Special Homebuilders Coverage Endorsement, which replaced the standard "Other Insurance" clause, made it excess over all other insurance policies, including umbrella excess insurance policies.  To support its position, Hanover relies on 
Putnam v. New Amsterdam Casualty Company
, 48 Ill. 2d 71, 269 N.E.2d 97 (1970), which held that where two policies cover the same loss, Illinois courts will give effect to the respective "Other Insurance" clauses and apply them as written, but, if incompatible, will prorate coverage between the two policies.

Hanover compares the "Other Insurance" clauses of both policies and argues that its policy is excess over American Country's umbrella policy because it is "excess over any other insurance, whether primary, excess, contingent or on any other basis," whereas American Country's policy is "excess over any other valid and collectible insurance, whether primary, excess, contingent, or any other basis, 
except other insurance written specifically to be excess over this insurance
."  Emphasis added.  Hanover considers its policy as "written specifically to be excess over" American Country's umbrella policy.  Hanover further claims that it pays last over all other coverage because its policy stated that it does not pay until after all other insurance has been paid.  

In response, American Country argues that its Commercial Excess Policy is a true excess policy that does not pay until Hanover's primary policy limits are exhausted.  To support its position, American Country relies on 
Illinois Emcasco Insurance Co. v. Continental Casualty Company
, 139 Ill. App. 3d 130, 133-134, 487 N.E.2d 110 (1985), which held that a primary policy pays before an excess umbrella policy and that the general rules regarding excess and "Other Insurance" clauses do not apply in that situation.

This court's review is 
de novo
.  Deciding whether the summary judgment entered was correct is a question of law (
Cates v. Cates
, 156 Ill. 2d 76, 78, 619 N.E.2d 715 (1993)) as is the construction of an insurance policy's provisions (
Outboard Marine Corp. v. Liberty Mut. Ins. Co.
, 154 Ill. 2d 90, 108, 607 N.E.2d 1204 (1992)).

After analyzing 
Putnam v. New Amsterdam Casualty Company
, 48 Ill. 2d 71, 269 N.E.2d 97 (1970)
 and
 
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d 130, 487 N.E.2d 110 (1985), we come to the conclusion that they are complementary, not conflicting, decisions.

In 
Putnam
, 48 Ill. 2d at 73, passengers involved in an automobile accident caused by an uninsured motorist sued the owner and driver of the car in which they were riding.  The owner and driver, who were married, were insured by Hartford Accident & Indemnity Company (Hartford) under a policy that covered the passengers as insureds.  The Hartford policy paid the passengers $7,500, as their apportioned share, under the policy's uninsured motorist provision. 
 After receiving the $7,500, the passengers sought payment under their insurance policy's uninsured motorist provision with New Amsterdam Casualty Company (New Amsterdam), seeking compensation for their damages that exceeded $7,500.  
Putnam
, 48 Ill. 2d at 73.

The Illinois Supreme Court ruled that New Amsterdam was not liable because its policy's "excess-escape" clause precluded recovery.  
Putnam
, 48 Ill. 2d at 89.  The court explained that where two insurance policies cover a loss at the 
same
 level, Illinois courts look to the "other insurance" clauses to determine each insurer's liability.  After analyzing the applicable clauses of both insurance policies, the court concluded that the New Amsterdam policy clearly provided that its coverage applied only as excess insurance if other insurance was available.
  Since the Hartford policy was other available insurance, the injured passengers were not entitled to any recovery under their New Amsterdam policy.  

The court adopted the majority approach and based its decision on the underlying general principles of the majority view.  
Putnam
, 48 Ill. 2d at 82.  The court explained that the majority approach is "to reconcile the applicable clauses of conflicting policies, therefore giving effect to the intention of all the parties, whenever possible."  
Putnam
, 48 Ill. 2d at 80.  

In 
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 131, Warren Kolber, who was driving a car owned by Clark King with King's permission, was involved in an automobile accident.  His two passengers sued him for damages and two judgments totalling $2,034,000 were entered against him.  
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 131. 

Both Kolber and King were insured against the accident.  King was insured by State Farm Mutual Insurance Company, which paid its $300,000 policy limit toward the judgment.  King was also insured under an umbrella excess liability policy issued by CNA, which required an underlying primary automobile insurance policy in the amount of $300,000.  Kolber, as an approved driver, was an additional insured under the umbrella policy.  Kolber was also insured under a policy issued by Emcasco to Kolber's father as a member of his father's household.  
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 131.

The Emcasco policy was a primary policy that became an excess policy and the CNA policy was an umbrella excess policy, also known as a "true excess" policy.  
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 132.  Both policies included "Other Insurance" clauses, which provided that "the insurance with respect to a *** non-owned automobile shall be excess over any valid and collectible insurance."  
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 132.  

The 
Illinois Emcasco
 decision explained that an umbrella policy is different from a primary policy containing an excess insurance clause.  
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 132-33.  Not only does an umbrella policy provide special coverage unique to coverage provided by primary policies, but its premiums are generally lower than those for primary policies because they pay above the limits of primary coverages.  As a result, instead of examining the individual "Other Insurance" clauses, the court construed the policies as a whole and the underlying policy considerations.  
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 133.

Because the Emcasco policy provided primary coverage and the CNA policy required the procurement of underlying insurance coverage, the appellate court ruled that the two policies could not be considered on the same level nor could the general rules regarding excess clauses be applied.  
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 134.  The appellate court held that when one policy is a primary policy and another policy is an umbrella excess policy, the umbrella policy should be required to contribute only after the limits of the primary policy have been reached.  
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 134.  The court stated that "the two policies cannot be considered on the same level nor can the general rules regarding excess and escape clauses be applied."  
Illinois Emcasco Insurance Co.
, 139 Ill. App. 3d at 134.

Illinois Emcasco
 cites the Appleman treatise on insurance, which states:  

"There is, however, a unique form of excess contract which always remains excess over and above all other applicable forms of contract, except as to the specific risks upon which it may elect to carry the primary burden.  That is the umbrella or catastrophe policy.

* * * *

[U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses."  8A Appleman, 
Insurance Law and Practice
 §4906, at 348, §4909.85, at 453-54 (1981).

The 
Putnam
 and 
Illinois Emcasco
 cases are not conflicting since the 
Putnam
 case involves two primary policies that contain "Other Insurance" clauses and 
Illinois Emcasco
 involves a primary policy with an "Other Insurance" clause and an umbrella excess policy.  

Another case to consider is 
Federal Insurance Co. v. St. Paul Fire and Marine Insurance Co.
, 271 Ill. App. 3d 1117, 649 N.E.2d 460 (1995)
, which compares the law in 
Putnam
 and 
Illinois Emcasco
.  In 
Federal Insurance Co.
, 271 Ill. App. 3d at 1117, the physician who was liable for a patient's injuries was insured by a professional liability policy issued by Employers Fire Insurance Company (Employers).
  That policy contained an "Other Insurance" clause, which stated that the policy was primary insurance and its liability was not reduced by the existence of an excess policy.  
Federal Insurance Co.
, 271 Ill. App. 3d at 1119.  

In addition, Federal Insurance Company (Federal) issued an excess professional liability, or umbrella, policy to the doctor.  It specifically provided that it was excess only to the Employers policy and did not include an "excess over any other insurance" clause.  The third insurer, St. Paul Insurance, issued a professional liability policy to the medical corporation that provided coverage for the emergency room doctors to the hospital, naming its physician employees, including the liable physician, as insureds.  
Federal Insurance Co.
, 271 Ill. App. 3d at 1119.  

The case was settled for $1.7 million.  Based on the "Other Insurance" clauses, the trial court apportioned liabilities between Employers, St. Paul, and Federal.  The court found that Employers and St. Paul were each responsible on a primary level for $100,000 and the remaining $1.5 million was to be shared between St. Paul and Federal.  
Federal Insurance Co.
, 271 Ill. App. 3d at 1121.  

The court agreed that where two insurance policies cover a loss at the same level, Illinois courts look to the "other insurance" clauses to determine each insurer's liability.  When there are two or more primary policies, they can be compared by looking at the "Other insurance" clauses of the applicable policies to resolve apportionment issues. 
 
Federal Insurance Co.
, 271 Ill. App. 3d at 1122.  

Although the appellate court affirmed the trial court's judgment, it explained that its decision was based on the specific language of Federal's excess policy, which stated that the policy was specifically excess to Employers policy.  Without that specific language, the appellate court would have followed 
Illinois Emcasco
 and found that Federal's umbrella excess policy was excess over all the other policies involved.  
Federal Insurance Co.
, 271 Ill. App. 3d at 1123.    

There is no such language in American Country's umbrella excess policy limiting its excess coverage to any specific other insurance policy.  The only exception is for insurance written specifically to be excess over the umbrella policy.  The general language in Hanover's "Other Insurance" clause cannot be interpreted to mean that it was specifically written to be excess over American Country's umbrella policy.  If that had been the intention, the American Country umbrella policy would have been specifically named in the Hanover "Other Insurance" clause.  Therefore, in accordance with the reasoning in 
Federal Insurance Co.
 and 
Emcasco
, we conclude that American Country's umbrella policy is excess over Hanover's policy.

We also considered 
United States Fidelity and Guaranty Co. v. Continental Casualty Co.
, 198 Ill. App. 3d 950, 955, 556 N.E.2d 671 (1990), which held that the doctrine of equitable distribution does not apply to primary/umbrella excess insurer issues.  That court stated:

"This court has expressly recognized that differences exist between the 'unique and special coverage' of an excess policy and a primary policy.  (
Illinois Emcasco Insurance Co. v. Continental Casualty Co.
 (1985), 139 Ill. App. 3d 130, 487 N.E.2d 110.)  By definition, the policies do not cover the same risks, 
i.e.
, when the protections of the primary policy cease, the protections under the excess policy commence."  
United States Fidelity and Guaranty Co.
, 198 Ill. App. 3d at 955.  

See also 
U.S. Gypsum Co. v. Admiral Insurance Co.
, 268 Ill. App. 3d 598, 651-655, 643 N.E.2d 1226 (1994) and 
Missouri Pacific Railroad Co.
, 288 Ill. App. 3d 69, 80-84, 679 N.E.2d 801 (1997).

Based on the foregoing, we affirm the circuit court judgment.  

Wolfson, J., and McNamara, J., concur.