FIRST DIVISION

May 18, 1998

No. 1-96-2235

IN THE APPELLATE COURT

OF ILLINOIS

FIRST JUDICIAL DISTRICT

NEW HAMPSHIRE INSURANCE COMPANY,

Plaintiff-Appellee,

v.

HANOVER INSURANCE COMPANY,

Defendant-Appellant

(FCL/Stava Group, Inc.,

Defendant).

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Michael Brennan Getty,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This appeal involves an insurance coverage dispute between plaintiff, New Hampshire Insurance Company (New Hampshire), and defendant, Hanover Insurance Company (Hanover), regarding the priority of coverage as between two insurance policies.  Hanover appeals from the trial court's decision that the umbrella policy issued by New Hampshire was an excess policy over and above the primary commercial general liability policy issued by Hanover, thereby entitling New Hampshire to reimbursement of $450,000 paid to settle the underlying case, plus prejudgment interest.  We affirm.  The relevant facts follow.

Thaddeus Smolucha, plaintiff in the underlying case, was injured on July 6, 1992, while working on a construction project at a General Motors plant in Chicago, Illinois.  At the time, plaintiff's employer was S.G. Krause, a subcontractor of FCL/Stava.  FCL/Stava was one of the defendants in the underlying case.

Pursuant to the contract between S.G. Krause and FCL/Stava, S.G. Krause had procured insurance from Granite State Insurance Company which named FCL/Stava as an additional insured.  FCL/Stava also had its own commercial general liability policy from Hanover.  S.G Krause also procured a commercial liability excess umbrella policy from New Hampshire which named FCL/Stava as an additional insured, although this umbrella policy was not required by the contract between S.G. Krause and FCL/Stava.  All three policies were in effect on July 6, 1992, the date of Smolucha's injury in the underlying case.

A settlement was reached in the underlying case and Smolucha received a lump sum of $1,450,000 in exchange for a release against all defendants.  Granite State contributed its $1 million limit of insurance to the settlement under the policy it had issued to S.G. Krause.  There is no dispute that this policy was the primary policy which was required to pay the first $1 million.  What is in dispute, and the first issue we address in this appeal, is which company's policy was responsible for the remaining $450,000 of the settlement.  New Hampshire paid the $450,000, while reserving its rights to pursue Hanover for contribution and/or indemnity.  New Hampshire and Hanover agreed to litigate the following issue:

"With respect to the $1.45 million settlement of the Smolucha case and New Hampshire's payment of $450,000 on behalf of its additional insured, FCL/Stava Group, under New Hampshire's excess umbrella policy, what is the order of priority of coverage as to the $450,000 amount as between New Hampshire's excess umbrella policy and Hanover's home builders policy, construing these policies as a whole and specifically with respect to their respective 'other insurance' clauses?"

On August 10, 1995, New Hampshire filed a first amended complaint for declaratory judgment, requesting the court to determine the priority of coverage as between the two policies.  The complaint sought a declaration from the court that Hanover's commercial general liability policy provided coverage on a primary, noncontributing basis relative to New Hampshire's excess umbrella policy.  The complaint also requested that Hanover be ordered to pay New Hampshire $450,000, plus statutory prejudgment interest.

On December 8, 1995, New Hampshire filed a motion for judgment on the pleadings.  On March 29, 1996, the trial court granted New Hampshire's motion; Hanover's motion for rehearing was denied on May 26, 1996.  On June 14, 1996, the trial court granted New Hampshire's motion for prejudgment interest.  Hanover appeals from the trial court's orders of March 29, 1996, May 26, 1996, and June 14, 1996.

OPINION

Our review of the trial court's granting of New Hampshire's motion for judgment on the pleadings is 
de novo
. See 
Chicago Title and Trust Co. v. Steinitz
, 288 Ill. App. 3d 926, 934, 681 N.E.2d 669, 674 (1997).  This appeal involves two issues.  The first issue is whether the trial court correctly ruled that New Hampshire's umbrella policy was an excess policy over and above Hanover's primary commercial general liability policy, thereby entitling New Hampshire to reimbursement of the $450,000 that it paid to settle the underlying case.  The second issue is whether the trial court was correct in awarding prejudgment interest to New Hampshire.

INSURANCE COVERAGE ISSUE

   The first issue can be summarily disposed of based upon the recent well-reasoned opinion of this court in 
American Country Insurance Co. v. Hanover Insurance Co.
, 293 Ill. App. 3d 1025 (1997).  Hanover, the party here, was also a party in that case.  While the facts and procedural histories of the two cases are not identical, the essential issue of which policy was excess is the same.  In 
American Country Insurance
, as here, Hanover argued that its "other insurance" clause, which replaced the standard preprinted form "other insurance" clause, made it excess over all other insurance policies, including umbrella excess policies. 293 Ill. App. 3d at 1026-27.  The plaintiff in 
American Country
 argued, as does New Hampshire here, that its excess policy was a "true" excess policy that does not pay until all "primary" policy limits are exhausted.

The 
American Country
 court analyzed 
Putnam v. New Amsterdam Casualty Co
., 48 Ill. 2d 71, 269 N.E.2d 97 (1970), which stood for the proposition that where two policies cover the same loss, Illinois courts will give effect to the respective "other insurance" clauses and apply them as written but, if incompatible, will pro rate coverage between the two policies. 293 Ill. App. 3d at 1028.  Hanover, here, relies upon 
Putnam
 to support its position, as it did in 
American Country.
 293 Ill. App. 3d at 1028.  Also analyzed by the 
American Country
 court was the case of 
Illinois Emcasco Insurance Co. v. Continental Casualty Co.
, 139 Ill. App. 3d 130, 487 N.E.2d 110 (1985), which held that a primary policy pays before an excess umbrella policy and in such a situation, general rules regarding excess and "other insurance" clauses do not apply. 293 Ill. App. 3d at 1028.

Hanover argues, in essence, that the 
Illinois Emcasco
 court, by focusing on the type of insurance policy rather than the specific language of the "other insurance" clause contained in each policy, incorrectly deviated from the test set out by the supreme court in 
Putnam
.  We disagree and are instead in accord with the 
American Country
 court's determination that 
Putnam
 and 
Illinois Emcasco
 are complementary, not conflicting, decisions because 
Putnam
 involved two primary policies that contained "other insurance" clauses, while 
Illinois Emcasco
 involved a primary policy that had an "other insurance" clause and an umbrella excess policy. 293 Ill. App. 3d at 1028-29.  It is well known that an umbrella policy is different from a primary policy containing an excess insurance clause in that an umbrella policy provides a special and unique coverage.  Since umbrella policies, by their nature, only pay above the primary policies, this different type of coverage generally allows for lower premiums than those of primary policies.  See, 
e.g.
, 
American Country
, 293 Ill. App. 3d at 1030, citing 
Illinois Emcasc
o
, 139 Ill. App. 3d at 132-33, 487 N.E.2d 112.  We are reluctant to interfere with this market driven fact.  In our view, deciding an umbrella policy should pay before a primary policy with an excess clause makes neither commercial nor legal sense.  In accordance with the reasoning of 
American Country
, we conclude that the trial court in the instant case properly decided that New Hampshire's umbrella policy was excess over and above Hanover's primary commercial general liability policy.

PREJUDGMENT INTEREST ISSUE

We now address the second issue of whether New Hampshire is now entitled to be reimbursed by Hanover for prejudgment interest for the $450,000 that New Hampshire paid out of its umbrella policy, in view of the fact that Hanover was responsible for the settlement amount under its primary policy.  Generally, prejudgment interest "is not recoverable absent a statute or agreement providing for it." 
City of Springfield v. Allphin
, 82 Ill. 2d 571, 576, 413 N.E.2d 394, 396 (1980).

Hanover contends that New Hampshire should not have been awarded prejudgment interest for two reasons.  The first reason offered by Hanover is that the parties agreed that the only issue that would be litigated would be the order in which the policies in issue would pay the $450,000.  The trial court correctly agreed with New Hampshire's contention that the right to prejudgment interest was not a coverage issue and was not contemplated by the parties at the time they entered into the agreement to litigate the coverage issue.  This conclusion is supported by the fact that New Hampshire specifically included in its complaint a request for prejudgment interest as part of its prayer for relief.  Hanover never moved to strike this request from the complaint.  Thus, while the parties' agreement did not constitute an agreement for prejudgment interest, it also did not preclude a request for such interest.  Whatever other "coverage issues" Hanover agreed not to pursue, in order to assure a faster resolution of the primary coverage issue, "prejudgment interest" was not one of them. Prejudgment interest is not an "issue" but, rather, a statutory right. 

Hanover also argues that New Hampshire is not entitled to prejudgment interest under the Illinois Interest Act (Act) (815 ILCS 205/2 (West 1994)).  The Act provides as follows:

"§ 2. Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." 815 ILCS 205/2 (West 1994).

Hanover contends that the parties did not have the requisite debtor-creditor relationship contemplated by the statute because there was no "instrument of writing" as the term is used in the Act and the sum at issue was not liquidated until the court made its ruling of March 29, 1996.

Our supreme court has stated that cases in chancery do not necessarily need statutory authority for an award of prejudgment interest. 
In re Estate of Wernick
, 127 Ill. 2d 61, 86-89, 535 N.E.2d 876, 887-89 (1989).  Since we conclude that New Hampshire was entitled to prejudgment interest pursuant to the Illinois Interest Act (815 ILCS 205/2 (West 1994)), however, we need not consider whether any alternative equitable grounds for awarding prejudgment interest apply in this instance.

The cases addressing the issue of whether an insurance policy constitutes an instrument of writing pursuant to the Illinois Interest Act have typically involved insureds and their insurers.  Our research has not identified any published Illinois opinions where the party seeking the prejudgment interest was an excess insurer who had paid the money that was due under the policy from the primary insurer.  Nevertheless, under the facts of the instant case, we think this is a distinction without a difference.  The date that the money became due to the insured, FCL/Stava, was March 8, 1995, pursuant to the settlement of the underlying case with the plaintiff, Smolucha.  A debtor-creditor relationship was established at the point where New Hampshire paid the amount owed by Hanover.  That the money was due was clear under Illinois law at the time based upon the principle first pronounced in 
Illinois Emcasco
 and commonly referred to as "horizontal exhaustion," whereby all underlying coverage must be exhausted before excess coverage may be reached because excess coverage carries a smaller premium than primary coverage due to the lesser risk insured. 
Illinois Emcasco
, 139 Ill. App. 3d at 133, 487 N.E.2d at 112; see also, 
Missouri Pacific R.R. Co. v. International Ins. Co.,
 288 Ill. App. 3d 69, 81, 679 N.E.2d 801, 809 (1997).  At that point, if Hanover did not pay the money, clearly due under its policy as pronounced in the case of 
Illinois Emcasco
, FCL/Stava would have had a right to prejudgment interest.  That Hanover believed that 
Illinois Emcasco
 was wrongly decided does not mean it was not the state of current Illinois law.  Thus, while this is technically not a subrogation case, the fact that New Hampshire stepped into the shoes of the insured, 
and also agreed in writing with Hanover to seek reimbursement of its payment by way of a declaratory judgment action
, means that the requirement that there be an instrument in writing was met.

Hanover contends that, under the general rule of statutory construction known as 
ejusdem generis
, neither the insurance policy nor the agreement between it and New Hampshire to litigate the coverage issue constituted an "instrument in writing."  Under the rule of 
ejusdem generis
, where general words follow an enumeration of specific things of a particular class, the general words are to be construed as applying only to things of the same general class as those enumerated. See, 
e.g., Farley v. Marion Power Shovel Co.
, 60 Ill. 2d 432, 328 N.E.2d 318 (1975).  Thus, Hanover contends that, since the term "instrument of writing" follows a specific listing of types of commercial paper, 
i.e.
, bonds, bills and promissory notes, it would be a violation of this basic canon of statutory construction to construe the term to include insurance policies or agreements such as the one between New Hampshire and Hanover whereby New Hampshire paid the sum due and agreed to later litigate which party's policy was actually responsible for the sum.

That the phrase "or other
 instrument of writing
"
 should be construed under the rule of
 ejusdem generis
 was recognized by this court in 
Hamilton v. American Gage & Machine Corp.
, 35 Ill. App. 3d 845, 853, 342 N.E.2d 758, 765 (1976), and again in 
Fenton v. Board of Trustees
, 203 Ill. App. 3d 714, 561 N.E.2d 105 (1990).  We note, as did the court in 
Fenton
, that numerous cases have construed the term "instrument in writing" to include a variety of written documents.  See, 
e.g.
, 
Krantz v. Chessick
, 282 Ill. App. 3d 322, 668 N.E.2d 77 (1996) (contingency fee agreement); 
Hammel v. Ruby,
 139 Ill. App. 3d 241, 487 N.E.2d 409 (1985) (real estate listing contract); 
E.M. Melahn Construction Co. v. Village of Carpentersville
, 100 Ill. App. 3d 544, 427 N.E.2d 181 (1981)(building or construction contract); 
Montgomery Ward & Co., Inc. v. Wetzel
, 98 Ill. App. 3d 243, 423 N.E.2d 1170 (1981)(lease).  
Fenton
 held that a pension agreement was also an instrument in writing within the meaning of the statute since it was a similar instrument of indebtedness.  Moreover, it is well settled that an insurance policy is a written instrument covered by this statute and it has long been held that prejudgment interest may be recovered under such an insurance policy from the time money becomes due thereunder. See, 
e.g.
, 
Couch v. State Farm Insurance Co.,
 279 Ill. App. 3d 1050, 1054, 666 N.E.2d 24, 27 (1996); 
Industrial Indemnity Co. v. Vukmarkovic,
 205 Ill. App. 3d 176, 188, 562 N.E.2d 1073, 1081 (1990);
 Ervin v. Sears, Roebuck & Co.
, 127 Ill. App. 3d 982, 469 N.E.2d 243 (1984); 
Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.
, 45 Ill. App. 3d 401, 408 (1977).
  That those things which were specifically enumerated in the statute might also technically fit the definition of commercial paper is by happenstance.
  We conclude that the critical similarity shared by the specifically enumerated things in the statute, 
i.e.
, bonds, bills, and promissory notes, is that the writings evince the creation of an indebtedness or of a creditor-debtor relationship. See 
Hamilton
, 35 Ill. App. 3d at 853, 342 N.E.2d at 765.  Here, both the Hanover insurance policy and the written agreement between Hanover and New Hampshire were instruments in writing within the meaning of the Illinois Interest Act. 

Additionally, Hanover's argument that the amount was not liquidated is without merit.  It is true that prejudgment interest will be awarded for amounts due on an instrument in writing only if the amount was liquidated or was easily computed.
 Oldenburg v. Hagemann
, 207 Ill. App. 3d 315, 327, 565 N.E.2d 1021 (1991).  Nevertheless, if the amount is determinable, interest can be awarded on money payable even when the claimed right and the amount due require legal ascertainment. 
Martin v. Orvis Brothers & Co.
, 25 Ill. App. 3d 238, 251, 323 N.E.2d 73 (1974).  Here, there was no dispute that the amount due was $450,000.  Thus, even if there was a good-faith dispute as to which party was responsible for payment, it would be of no import.  Prejudgment interest may be awarded on money payable when a claimed right and the amount due still require legal ascertainment, despite the fact that the parties might reasonably differ as to their liability
. Bank of Chicago v. Park National Bank
, 266 Ill. App. 3d 890, 900, 640 N.E.2d 1288, 1296 (1994); 
Martin v. Orvis Brothers & Co.
, 25 Ill. App. 3d 238, 251, 323 N.E.2d 73 (1974).  While a good-faith dispute could preclude an award for prejudgment interest in a claim brought for an unreasonable refusal to pay, such a dispute does not preclude the recovery of prejudgment interest on money due under an instrument of writing.  
See
, e.g., Krantz v. Chessick
, 282 Ill. App. 3d 322, 327-28, 668 N.E.2d 77, 80 (1996).

Accordingly, for all the foregoing reasons, we affirm the trial court's decision that New Hampshire's umbrella policy was an excess policy over and above Hanover's primary commercial general liability policy, thereby entitling New Hampshire to reimbursement of the $450,000 that it paid to settle the underlying case, along with prejudgment interest.

Affirmed.

CAMPBELL, P.J. and O'BRIEN, J., concur.