# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3642

AMERITECH INFORMATION SYSTEMS,
INC., a Delaware corporation,

*Plaintiff-Appellee*,

v.

BAR CODE RESOURCES, a division of
ALLEN MANAGEMENT, INC., a Wisconsin
corporation,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99-C-8255—**John F. Grady**, *Judge.*

———————

ARGUED APRIL 17, 2003—DECIDED JUNE 5, 2003

———————

Before BAUER, MANION, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* After a 2-week bench trial on its breach-of-contract claim, Ameritech Information Systems, Inc. was awarded $515,124 plus interest for Bar Code Resources' (BCR) failure to install a fully functioning warehouse management system. BCR appeals.

Ameritech provides telephone systems to commercial business customers. It operates five warehouses, one each in Illinois, Indiana, Michigan, Ohio, and Wisconsin. The warehouses handle approximately 50,000 parts, and the Illinois warehouse alone handles up to 800 orders a day.

Prior to the events relevant to the contract involved in this case, Ameritech managed its warehouse operations with a computer system referred to as AIMS (Ameritech inventory management system). Ameritech entered orders into the AIMS computer. AIMS then sent the orders to the various warehouses where they were printed, picked up, and filled by Ameritech employees. The final step in the process was "inputting" information back into AIMS to record the actions the employees had taken. The system was inefficient.

BCR is a Wisconsin company which uses bar codes, bar code scanners, and computers to automate warehouses. Ameritech's warehouse manager attended a presentation by James Allen of BCR that led to a contract between Ameritech and BCR under which BCR was to provide a "full functioning warehouse management system" (WMS). A goal was to provide a system to transmit data electronically. The WMS system was to "interface to AIMS using two methods of data transfer." Information coming from AIMS would "travel through" the print system. This meant that WMS would gather information from AIMS by intercepting the signals that AIMS had been sending to the printers. After the data had been received and interpreted by WMS, it would be transmitted back to the AIMS system. The link from WMS back to AIMS was known to the parties as the HLAPPI (human language applications interface).

BCR says that the HLAPPI portion of the project was not its responsibility. Rather, Ameritech contracted separately with SHL Systemhouse to create the computer interface back to AIMS. Ameritech paid SHL $137,500 for creation of HLAPPI. But Ameritech says that BCR was responsible solely or jointly with SHL for development of the HLAPPI and that the HLAPPI itself was worthless without other systems working as they should.

The contract contained a detailed schedule for the completion of the system. BCR was to provide a "full-functioning" WMS to Ameritech no later than December 1, 1995.

That did not happen. The parties, of course, do not agree on why there were delays and who was at fault. BCR claims that data from AIMS was not consistent and that led to many problems in designing a computer program that would capture the data. Under this interpretation of events, the delays would have been Ameritech's fault. Ameritech does not deny that the data was in more than one format but says that BCR should have been able to deal with the formats that it had to read. Its inability to do so led to problems trying to design computer programs that would capture the data. In any event, the parties continued to work on the system for months after the completion date set out in the contract.

After giving Ameritech notice and an opportunity to cure an alleged failure to pay for services rendered, BCR sued Ameritech in a Wisconsin state court. BCR obtained a default judgment, but that judgment was set aside on appeal because of improper service of process. Ameritech then filed the present suit in an Illinois state court. Based on diversity of citizenship, BCR removed the case to the District Court for the Northern District of Illinois.

The district court determined that BCR was the party which breached the contract by not finishing the project by the completion date. The award was for $515,124, apparently with two components, though it is not entirely clear: $377,624 was the amount Ameritech had paid for the non-HLAPPI portion of the WMS and $137,500 was apparently for the HLAPPI portion of the WMS. On the latter, the reasoning seems to be that the HLAPPI module was functional, but because the rest of the system was nonfunctional the HLAPPI was worthless. The district court also awarded $165,268.95 in prejudgment interest, thus pushing the final judgment to slightly more than $680,000.

BCR raises three issues. It contends that the contract required notice and an opportunity to cure the breach prior to the filing of a lawsuit for breach. In BCR's view, Ameritech failed to give notice of the breach and thus is precluded

from recovering damages. Secondly, BCR contends that it is not responsible for damages for the HLAPPI portion of the WMS. Finally, BCR objects to the award of prejudgment interest. The first two issues involve the interpretation of a contract on which our review is *de novo*. *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615 (7th Cir. 1995).

Several provisions of the contract touch on the issue of notice. First, paragraph 3.2 states in part:

> In the event either party shall at any time neglect, fail, refuse to perform hereunder, or otherwise breach a material provision of this Agreement and such breach or default shall continue for a period of fifteen (15) days after the giving of written notice to the party in breach or default by the other then, upon written notice to the defaulting party, the aggrieved party may cancel this Agreement . . . .

Paragraph 19 sets out the manner in which notice must be given; it must be in writing and delivered to a particular person either by express delivery service or by certified mail.

Paragraph 5 states that a provisioning schedule for the WMS is set out in Attachment D. It then says that "Supplier shall develop and provision the modules in accordance with the schedule. Further, in the event that any date in the provisioning schedule slips by more than ten (10) business days, Supplier shall be deemed to be in default."

Finally, paragraph 23 provides that the "rights and remedies provided herein shall be cumulative and in addition to any other remedies available at law or in equity."

BCR argues that Ameritech did not provide written notice of the right to cure as required by paragraph 3.2 and did not comply with the method of providing notice set out in paragraph 19 of the contract. Because, in BCR's view, Ameritech has not complied with the contract, it cannot enforce it. For its part, Ameritech claims that notice is not a

prerequisite to its right to sue for breach of contract. It says paragraph 3.2 is a termination provision which does not abridge the right to sue for breach, which Ameritech derives from paragraph 23. In Ameritech's view, paragraph 3.2 simply gives either party the right to cancel or terminate the contract if a breach that is the subject of written notice continues for 15 days after the notice is given. And in any case, Ameritech says it did, in fact, give notice in the form of a fax transmission sent on July 18, 1996. BCR walked off the job in October.

We agree that paragraphs 3.2 and 5 do not set out conditions precedent to filing a suit for breach of contract. Paragraph 5 is a provision covering default on the schedule. Paragraph 3.2 is a provision for terminating the contract in the event of default or breach of the contract. It is undisputed that BCR did not meet the scheduling deadlines. Ameritech had also apparently paid for systems which did not work. Under paragraph 3.2, if Ameritech wanted to terminate the contract, it had to pay only for services properly performed. However, there is nothing in these provisions which prevents a suit for breach. That is especially true, given the retention of remedies specifically set out in paragraph 23.

In any case, required or not, there was notice, which substantially complied with the termination provision. The fax Ameritech sent BCR stated:

> Please be advised, Ameritech considers BCR to be in default on this agreement due to failure to meet the provisioning schedule.

In truth, BCR had months, not 15 days as the contract required, in which to correct the problems.

Turning to BCR's objection to the award of damages for the HLAPPI interface, we note that the issue has been raised for the first time in this court. As an explanation for its failure to raise the issue in the trial court, BCR says

that at trial it was trying to assert a claim for damages *against* Ameritech, not to limit Ameritech's damages. For that reason, it says it should not be faulted for not raising the issue at trial. Even were we to credit that explanation, it does not explain why the issue was not raised in post-trial motions. Because it is clearly established that a party may not raise an argument for the first time on appeal, *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776 (7th Cir. 2000), and *Consolidated Bearings Co. v. Ehret-Krohn Corp.*, 913 F.2d 1224 (7th Cir. 1990), we hold that this issue has been waived.

BCR also argues that it was error to award prejudgment interest. We review this issue only for an abuse of discretion. *See SNA Nut Co. v. Haagen-Dazs Co.*, 302 F.3d 725 (7th Cir. 2002).

815 ILCS 205/2 provides:

> § 2. Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment. In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor.

BCR argues that the statute applies only to creditor-debtor relationships, primarily with lending institutions.

Under Illinois law, statutory interest can be recovered at the discretion of the court. *Bank of Chicago v. Park Nat'l*

*Bank*, 660 N.E.2d 19 (Ill. App. 1995). The statute is applied on "instruments of writing," such as construction contracts. *See Transportation & Transit Assoc., Inc. v. Morrison Knudsen Corp.*, 255 F.3d 397 (7th Cir. 1993); *E.R. Stone v. City of Arcola*, 536 N.E.2d 1329 (Ill. App. 1989). The creditor must, however, prove that the money due was a liquidated amount or subject to easy computation. *Kansas Quality Constr., Inc. v. Chiasson*, 250 N.E.2d 785 (Ill. App. 1969). In the present case, the damages were what Ameritech paid and are thus easily ascertainable. The award of prejudgment interest was not an abuse of discretion.

The decision of the district court is AFFIRMED.


A true Copy:

  Teste:


       _____

       *Clerk of the United States Court of Appeals for the Seventh Circuit*