FEDERAL INSURANCE COMPANY, Plaintiff-Appellant, v. ST. PAUL FIRE
AND MARINE INSURANCE COMPANY, Defendant-Appellee.

First District (3rd Division)    No. 1—93—4341

Opinion filed March 31, 1995.—Rehearing denied May 18, 1995.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, Fritz K. Huszagh, and Christine L. Olson, of counsel), for appellant.

Barry G. Bollinger and Kelly A. Giampa, both of Bollinger, Ruberry & Garvey, of Chicago, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

In a dispute between two insurance companies regarding their respective liability, plaintiff Federal Insurance Company (Federal) appeals the trial court's apportionment between Federal and defendant St. Paul Fire and Marine Insurance Company (St. Paul).

The issue on appeal is whether an excess and a primary insurer must share liability on a *pro rata* basis where the excess insurance policy identifies by name another company issuing a primary policy to which the excess policy relates.

We affirm and find that an excess insurance policy which specifically names the underlying policy to which it relates and makes no general reference to other policies operates as an excess policy only to the named primary carrier and not to any other primary policy which covers the insured.

The facts are not in dispute. Three insurance companies share liability for a $1.7 million settlement in the underlying action where Tracy Swider alleged that she sustained injuries while a patient in the emergency room at Holy Cross Hospital. Swider filed a complaint against Physician's Emergency Room Consulting Organization, Ltd. (a medical corporation referred to as PERCO), which provided emergency room physicians to the hospital, and against Dr. Jose Parisi, who treated and diagnosed Swider. In May 1992 Swider's case was settled for $1.7 million and payments were made by three insurance companies, each of which insured Dr. Parisi.

At the time of settlement, the three insurers contributed the following payments:

| Employers/Commercial Union | $100,000 |
| St. Paul | $800,000 |
| Federal | $800,000. |

Employers Fire Insurance Company (Employers), also known as Commercial Union Insurance Company, issued to Dr. Parisi a professional liability policy which provided primary insurance liability coverage for $100,000 per claim. In accordance with this policy, Employers paid $100,000 in the Swider action and is not involved in the instant appeal.

Employers' policy contains an "other insurance" clause which designates this policy as primary insurance and provides that its liability is not reduced by the existence of an excess policy. The remaining portion of this clause provides for contribution with other carriers in equal proportionate shares if the policies so provide or contribution by limits of liability in the policies which do not so specifically provide.

Second, Federal issued an excess professional liability policy to Dr. Parisi and its policy limits were $1 million in excess of $100,000 for each claim. Federal's policy, entitled "Excess Professional," provides:

> "IV. LIMIT OF LIABILITY
> The company's limit of liability is $1,000,000 [for] each claim but not exceeding $1,000,000 during each annual period commencing on the effective date of this policy, in excess of $100,000 [for] each claim $300,000 aggregate of the following policy, or that portion of the following policy which applies to professional liability, herein known as the underlying policy:
> Insurance Company *Employers Fund Insurance Company.*"

(Emphasis added.)

Federal's policy also contains an "other insurance" clause:

> "5. OTHER INSURANCE
> If the named insured has in force other professional liability insurance in excess of the limits of liability of the underlying policy (except insurance purchased to apply in excess of the sum of the limits of liability of the underlying policy and the limits of liability of this policy), the insurance afforded by this policy shall not be applicable for a greater proportion of a claim than the applicable limit of liability stated in this policy bears to the total applicable limit of liability of all valid and collectible excess insurance against such claim."

The third insurer, St. Paul, issued a professional liability policy to PERCO, naming the physicians employed by PERCO as insureds, including Dr. Parisi, and providing up to $1 million in coverage. St. Paul's policy is entitled "Combination Professional Policy" and provides for professional liability coverage as follows:

> "COVERAGE A—PROFESSIONAL LIABILITY
> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services rendered or which should have been rendered, during the policy period, by the Insured or by any person for whose acts or omissions the Insured is legally responsible."

St. Paul's policy also contains an "other insurance" clause:

"E. OTHER INSURANCE

With respect to Coverage A, if the Insured has other insurance against a loss covered by this Policy, the Company shall not be liable under this Policy for a greater proportion of such loss than the limit of liability stated in the Declarations bears to the total limit of liability of all valid and collectible insurance against such loss.

\* \* \*

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(1) CONTRIBUTION BY EQUAL SHARES

If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(2) CONTRIBUTION BY LIMITS

If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this Policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Before the Swider action was settled, Federal filed a first amended complaint for declaratory judgment seeking a declaration that (1) St. Paul's policy provides primary coverage for Dr. Parisi in the amount of $1 million and (2) St. Paul's coverage is primary to the excess coverage provided to Dr. Parisi by Federal.

Thereafter, Federal and St. Paul filed cross-motions for judgment on the pleadings pursuant to section 2—615(e) of the Illinois Code of Civil Procedure. 735 ILCS 5/2—615(e) (West 1992).

Federal maintained that, before it is liable under its excess policy, St. Paul must first pay its maximum obligation as the primary insurer, i.e., $1 million. Thus, under its theory, Federal overpaid in the Swider settlement by $200,000 and St. Paul should reimburse Federal by that amount.

On the other hand, St. Paul contended that it and Federal should share on a *pro rata* basis pursuant to the "other insurance" clauses of the two policies (Federal's and St. Paul's).

The trial court found that the "other insurance" clauses of all three carriers (Employers, St. Paul and Federal) determined the respective liability of each insurer in the Swider settlement. Based on the "other insurance" clauses, the trial court found that Employers and St. Paul were each responsible on a primary level for $100,000. The remaining $1.5 million of the settlement must be shared between St. Paul and Federal pursuant to the "other insurance" clauses.

From these findings, the trial court apportioned the Swider settlement as follows:

| | |
|---|---|
| Employers (on a primary level) | $100,000 |
| St. Paul (on a primary level) | $100,000 |
| St. Paul (on a secondary level with Federal) | $710,500 |
| Federal (on a secondary level with St. Paul) | $789,500. |

The trial court thus found that St. Paul's total liability is $810,500 and Federal's total responsibility is $789,500. To adjust the $800,000 payments made by both St. Paul and Federal in the Swider settlement, the trial court ordered St. Paul to pay $10,500 to Federal.

On appeal, Federal asserts that the trial court erred in requiring the two carriers (Federal and St. Paul) to share liability *pro rata* by relying on the "other insurance" clauses in their respective policies. Federal argues that St. Paul's policy provides primary coverage and Federal's policy provides excess coverage. Federal submits that since the two insurers provide different levels of coverage, it, as an excess carrier, was not required to contribute toward the settlement until all coverage afforded by St. Paul, as the primary insurer, was exhausted, and the "other insurance" clauses in the two policies cannot be construed together because the policies do not apply on the same level.

St. Paul contends that it provided a primary policy which became excess due to the application of "other insurance" clauses. Relying on the "other insurance" clauses, St. Paul argues that the policies of both Federal and St. Paul are excess policies above the limits of Employers' policy and consequently both carriers, as excess insurers, share the settlement on a *pro rata* basis.

•1 We apply a *de novo* standard of review to a matter which was decided by the trial court on a motion to dismiss, since such motion does not require the court to weigh facts or determine credibility. (*Toombs v. City of Champaign* (1993), 245 Ill. App. 3d 580, 583, 615 N.E.2d 50.) Moreover, an insurance policy is a contract. (*Perkins &*

*Will v. Security Insurance Co.* (1991), 219 Ill. App. 3d 807, 812, 579 N.E.2d 1122.) "The construction of a contract and the determination of the rights and obligations of the parties to the contract are questions of law, the determination of which rests exclusively with the court." (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 58, 514 N.E.2d 150 (construing multiple comprehensive general liability policies insuring asbestos manufacturer).) The trial court's determination is subject to *de novo* review. *Chester v. State Farm Mutual Automobile Insurance Co.* (1992), 227 Ill. App. 3d 320, 326, 591 N.E.2d 488.

●2 The parties correctly agree that where two insurance policies cover a loss at the *same* level, Illinois courts look to the "other insurance" clauses to determine each insurer's liability. (See *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 269 N.E.2d 97.) Accordingly, two or more primary policies can be, and indeed have been, compared by looking at the other insurance clauses of the applicable policies to resolve apportionment issues. *E.g.*, *Deerfield Management Co. v. Ohio Farmers Insurance Co.* (1988), 174 Ill. App. 3d 837, 846, 529 N.E.2d 243 (each of the two primary policies at issue "insured the same interests in the same property in favor of the same person"); *Honeywell, Inc. v. American Motorists Insurance Co.* (1982), 109 Ill. App. 3d 955, 441 N.E.2d 348 (two primary policies for comprehensive general liability).

Primary and excess policies, however, inherently serve different functions, cover different risks and attach at different stages. (*Home Indemnity Co. v. General Accident Insurance Co.* (1991), 213 Ill. App. 3d 319, 321, 572 N.E.2d 962.) Liability under an excess policy attaches only after a predetermined amount of primary coverage has been exhausted. *Royal Insurance Co. v. Process Design Associates, Inc.* (1991), 221 Ill. App. 3d 966, 978, 582 N.E.2d 1234; *Atlanta International Insurance Co. v. Checker Taxi Co.* (1991), 214 Ill. App. 3d 440, 443, 574 N.E.2d 22 ("[i]n contrast to primary insurance, excess coverage is contingent on the exhaustion of the underlying policy or policies of insurance"); *Federal Insurance Co. v. Economy Fire & Casualty Co.* (1989), 189 Ill. App. 3d 732, 738, 545 N.E.2d 541 ("[e]xcess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted").

■ The terms of the policy determine whether an insurance policy is primary or excess. (*Chester*, 227 Ill. App. 3d at 326.) In *Illinois Emcasco Insurance Co. v. Continental Casualty Co.* (1985), 139 Ill. App. 3d 130, 487 N.E.2d 110, this court held that a policy which provides primary coverage in almost all regards (the Emcasco policy) cannot

be considered on the same level as an "umbrella excess third-party liability policy" (the CNA policy). This court specifically rejected the primary carrier's argument in *Emcasco*, like St. Paul's argument in the present case, that the court should resolve the carriers' liability by examining the "other insurance" clauses contained in the policies. (*Emcasco*, 139 Ill. App. 3d at 132.) "Instead of examining the individual other insurance clauses, we believe we must construe the policies as a whole and the underlying policy considerations." *Emcasco*, 139 Ill. App. 3d at 133.

■ In accordance with the principle that only policies covering a loss at the same level can be reconciled by reference to the "other insurance" clauses, St. Paul's primary policy cannot be compared to Federal's excess policy in that way. Under the primary exhaustion principle, Federal's liability, absent specific policy language to the contrary, would not be triggered until the limits of the primary policies had been exhausted.

The distinguishing feature, however, present in the instant case and absent in previous case law is that Federal specifically confined its status as an excess carrier only to Employers, not St. Paul and not any other named or generic policy. The express language of Federal's policy provides that its liability is in excess of the underlying policy identified as Employers. Federal's policy makes no mention of St. Paul or any primary policies. Consequently, Federal's policy must be deemed an excess policy only as to Employers. If Federal had intended to be an excess carrier to other or all primary insurers of Dr. Parisi, Federal could have included such language in its policy. In this case, Federal made itself excess only to Employers.

Moreover, this result enforces the policy as written. Federal stands exactly where it contracted to be, *i.e.*, secondarily liable to Employers and liable for claims in excess of $100,000.

Furthermore, Federal's reliance on *United States Gypsum Co. v. Admiral Insurance Co.* (1994), 268 Ill. App. 3d 598, is unavailing since that case fails to provide any further insights into the general principles of law applicable to the instant case and, as conceded by Federal at oral argument, is distinguishable on both the facts and issues addressed. If the Federal policy had the language of the "other insurance" clause in the policy in *Admiral*, the result might be different.

For all the foregoing reasons, we affirm the trial court's order apportioning the liability between the parties.

Affirmed.

TULLY and CERDA, JJ., concur.