TRAVELERS INDEMNITY COMPANY, Plaintiff-Appellant, v. AMERICAN CASUALTY COMPANY OF READING, a Pennsylvania Corporation d/b/a CNA Insurance Companies, Defendant-Appellee.

First District (3rd Division)   No. 1—02—2014

Opinion filed March 5, 2003.—Rehearing denied April 3, 2003.

Mitchell H. Frazen and Alexis A. Hawker, both of Litchfield Cavo, of Chicago, for appellant.

Michael P. Tone and Kimberly E. Blair, both of Ross, Dixon & Bell, L.L.P., of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

This appeal arises from a dispute between Travelers Indemnity Company (Travelers) and American Casualty Company (American Casualty) over the priority of coverage between an excess liability policy issued by Travelers and three primary liability policies with "other insurance" provisions issued by American Casualty. The circuit court concluded the excess policy and the primary policies should contribute *pro rata* to settlement of the underlying action.

Travelers appeals, contending the circuit court erred because the limits of the primary policies should be exhausted before Travelers is required to pay under the excess policy.

We agree with Travelers. We reverse and remand.

## BACKGROUND

In the underlying action, Ronald D. Potts brought a medical malpractice suit against 2 physicians and 10 nurses employed at Pekin Memorial Hospital and against Pekin Memorial Hospital. Potts alleged the prenatal and postnatal treatment of his wife and son, born on July 15, 1985, was negligent. Among the nurse defendants were Dorothy C. Lovell, Deborah M. Ruwe, and Patricia E. Krile.

## NURSES' LIABILITY INSURANCE POLICIES

For the time at issue in the underlying action, each of these three nurses had a professional nursing liability insurance policy issued by American Casualty (American Casualty Liability Policies). The policies for Lovell and Ruwe each had professional liability limits of $500,000 for each medical incident. Krile's policy had a professional liability limit of $1 million for each medical incident.

The American Casualty Liability Policies provided coverage for: "all amounts up to the limits of liability:

1. which you become legally obligated to pay as a result of injury or damage. The injury or damage must be caused by:

    a. a medical incident as a result of the supplying of or failure to supply professional services by you ***."

Each of the three policies also contained an "other insurance" clause, which read:

"If you have other insurance which applies to injury or damage resulting from your professional services, the other insurance must pay first. It is the intent of this policy to apply to the amount of loss which is more than the limit of the other insurance."

## PEKIN MEMORIAL HOSPITAL'S LIABILITY INSURANCE POLICIES

### Travelers Primary Liability Policy

Pekin Memorial Hospital had a primary general liability policy issued by Travelers covering the time at issue in the underlying complaint (Travelers Primary Liability Policy). The policy included coverage for professional liability with a limit of $500,000 per occurrence or medical incident.

The policy extended coverage to any employee of Pekin Memorial Hospital while acting within the scope of her duties. The underlying complaint alleged the nurses were acting within the scope of their employment. Thus, for purposes of the underlying action, Krile, Ruwe, and Lovell were additional insureds under the Travelers Primary Liability Policy.

### Travelers Excess Liability Policy

Pekin Memorial Hospital had a comprehensive hospital excess liability policy covering the relevant period. This policy was also issued by Travelers (Travelers Excess Liability Policy). The policy provided a liability limit of $10 million per claim and in the aggregate, subject to a self-insured retention of $500,000. The policy extended coverage to the nurse employees while acting within the scope of their employment.

An endorsement to the Travelers Excess Liability Policy listed the Travelers Primary Liability Policy as an underlying policy. The endorsement explains that the underlying policies scheduled in the endorsement are "deemed a part of the self-insurance plan and retention."

The Travelers Excess Liability Policy contained its own "other insurance" provision, which stated:

"This insurance is excess over any other insurance available to the

Insured (including a policy purchased by any additional insured hereunder). Amounts collectible under a self-insured trust plan or other self-insured plan shall be deemed other insurance. This clause does not apply to excess insurance written specifically to be in excess of this policy."

## PROCEEDINGS BELOW

In the underlying action, Travelers defended Pekin Memorial Hospital and its nurses. In April 2000, the parties settled the underlying action for $4,500,000.

On May 31, 2000, Travelers filed a declaratory judgment action against American Casualty seeking a declaration that policies described above should respond in the following order to the portion of the settlement of claims against Lovell, Ruwe, and Krile:[1]

(1) the Travelers Primary Liability Policy up to the $500,000 limit;

(2) the American Casualty Liability Policies up to their respective limits; and

(3) the Travelers Excess Liability Policy up to the $10 million limit.

American Casualty denied owing any contribution toward the portion of the settlement of claims against the nurses.

On January 1, 2001, Travelers moved for partial summary judgment contending the limits on the American Casualty Liability Policies had to be exhausted before coverage under the Travelers Excess Liability Policy was triggered. On March 1, 2001, American Casualty filed a cross-motion for summary judgment[2] and supporting brief, in which American Casualty contended the American Casualty Liability Policies were excess to the Travelers Excess Liability Policy or, alternatively, the court should require a *pro rata* allocation between the American Casualty Liability Policies and the Travelers Excess Liability Policy.

In its May 1, 2001, order, the circuit court denied in part and granted in part Travelers' motion with the following findings:

(1) American Casualty was required to contribute to the settlement;

---

[1]In its February 20, 2002, order, the circuit court noted "there has been neither an agreed nor an adjudicated allocation as among the many defendants in the underlying case, all of whose liability was extinguished by the settlement of $4.5 million, paid by Travelers."

[2]In American Casualty's cross-motion for summary judgment, American Casualty contended Travelers' suit was barred for reasons not relevant to this appeal. That motion was denied on August 20, 2001.

(2) the Travelers Excess Liability Policy and the American Casualty Liability Policies all provided coverage for the nurses in excess of the limits of the Travelers Primary Liability Policy; and

(3) the Travelers Excess Liability Policy and the American Casualty Liability Policies should all contribute to the settlement *pro rata.*

In subsequent orders dated February 20, 2002, and June 17, 2002, the circuit court allocated the settlement against the nurses *pro rata* among the two policies according to its May 1, 2001, order. Travelers appeals from these three orders.

## DECISION

■ Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2000); see also *General Casualty Insurance Co. v. Lacey,* 199 Ill. 2d 281, 284, 769 N.E.2d 18 (2002). We review an order granting summary judgment *de novo. General Casualty Insurance Co.,* 199 Ill. 2d at 284.

■ If two insurance policies extend coverage to the insured for the occurrence and have "mutually repugnant" clauses providing that each will be excess insurance over any other applicable insurance, then each insurance company is liable for a *pro rata* share of the judgment or settlement. *Continental Casualty Co. v. New Amsterdam Casualty Co.,* 28 Ill. App. 2d 489, 497-98, 171 N.E.2d 406 (1960). The threshold issue is whether the policies are on the "same level." *Illinois Emcasco Insurance Co. v. Continental Casualty Co.,* 139 Ill. App. 3d 130, 133, 487 N.E.2d 110 (1985).

■ Primary and excess policies "inherently serve different functions, cover different risks and attach at different stages." *Federal Insurance Co. v. St. Paul Fire & Marine Insurance Co.,* 271 Ill. App. 3d 1117, 1122, 649 N.E.2d 460 (1995). The primary policy typically covers claims starting at the first dollar of loss or the first dollar in excess of a deductible or self-retention. 1 E. Holmes & M. Rhodes, Holmes' Appleman on Insurance 2d § 2.16 (1996). Coverage under an excess policy is triggered after the limits of the primary policy have been exhausted. 1 E. Holmes & M. Rhodes, Holmes' Appleman on Insurance 2d § 2.16 (1996). In some instances, the excess policy sits above a self-insured retention, instead of an underlying policy. 1 E. Holmes & M. Rhodes, Holmes' Appleman on Insurance 2d § 2.16 (1996).

■ One type of excess coverage is the umbrella excess liability policy. It is "more than excess coverage" because it is intended to

provide comprehensive coverage to the insured. 1 E. Holmes & M. Rhodes, Holmes' Appleman on Insurance 2d § 2.16 (1996).

■ A policy that provides primary coverage in all respects cannot be considered on the same level as an umbrella excess liability policy. *Federal Insurance Co.*, 271 Ill. App. 3d at 1122-23; *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133-34. In analyzing whether a policy is truly an excess policy, we must not focus solely on the other insurance clauses but "must construe the policies as a whole and [review] the underlying policy considerations." *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133.

Our decision in *Illinois Emcasco Insurance Co. v. Continental Casualty Co.*, is instructive here. In that case, Warren Kolber was involved in a car accident while driving a car owned by Clark King, Jr. Kolber had King's permission to use the car. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 131.

Both Kolber and King had insurance that covered the accident. King had a primary policy with a $300,000 limit per accident with State Farm, which paid the policy limit in the underlying action. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 131.

King also was insured under an excess third-party liability policy issued by CNA to Lord, Bissell & Brook, which named King as an additional insured. The excess policy required the presence of an underlying auto policy with a limit of $300,000. The excess policy provided a limit of $2 million above any amount recoverable from the specified underlying primary policy. The policy also extended coverage to anyone operating King's car with King's permission. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 131.

Under a policy issued by Illinois Emcasco to Kolber's father, Kolber was covered for driving a car owned by another person. The policy had a $100,000 limit per person and a $300,000 limit per occurrence. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 131-32.

Both the CNA policy and the Illinois Emcasco policy contained "other insurance" provisions stating that each policy was to be in excess of any other policy providing coverage. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 132.

On appeal, CNA contended the limit on the Illinois Emcasco policy should be exhausted before the CNA policy was touched. Illinois Emcasco contended its policy and the CNA policy should not be treated differently. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 132-33.

We concluded CNA should be required to contribute under its policy only after the Illinois Emcasco limit was exhausted. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133-34. Our conclusion was based on the differences between a primary insurance policy and an umbrella excess insurance policy.

First, umbrella excess insurance policies are intended to " 'pick[ ] up, above the limits of all other contracts, such as automobile and homeowners coverages, to give the security and peace of mind so necessary today where jury verdicts, or court awards, may be very substantial, to discharge the unexpected, but potentially bankrupting, judgment.' " *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133, quoting 8A J. Appleman & J. Appleman, Insurance Law & Practice § 4906, at 348, § 4909.85, at 452 (1981). The CNA policy provided umbrella coverage, requiring underlying coverage; whereas the Illinois Emcasco policy was primary in nearly all respects. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133.

Moreover, premiums for umbrella policies tend to be comparatively small for the type of risk involved. The CNA excess policy had a significantly smaller premium for the $2 million of coverage than the Illinois Emcasco primary policy with a limit of $100,000 per person. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133.

Given these considerations, we concluded "the two policies cannot be considered on the same level nor can the general rules regarding excess *** clauses be applied. Rather, taken as a whole, we find that the umbrella policy issued by CNA should be required to contribute only after the limits of the Emcasco policy have been reached." *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133-34.

■ Here, the Travelers Excess Liability Policy meets all the criteria for an umbrella excess policy considered in *Illinois Emcasco Insurance Co.* The Travelers Excess Liability Policy is not intended to pay the first dollar of a loss. Rather, the policy is triggered after the self-insured retention limit, $300,000, is reached.

Moreover, the premium for the Travelers Excess Liability Policy is comparatively smaller than the premium for the Travelers Primary Policy. The premium for the first $300,000 of coverage under the Travelers Primary Liability Policy was $78,820. The premium for the Travelers Excess Liability Policy, which provided $10 million of coverage, was $59,977. "[T]his disparity in premiums is indicative of the reduced risk assumed by the [excess] policy." *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133.

American Casualty contends the Travelers Excess Liability Policy is not a true umbrella excess policy because the premium on the policy is significantly higher than the premiums the nurses paid for the American Casualty Liability Policies. Krile paid $58 for her policy. Lovell and Ruwe each paid $38 for their policies. American Casualty's argument is based on an illogical comparison.

The underlying risks for the Travelers Excess Liability Policy and the American Casualty Liability Policies are too different to render

any comparison of their premiums meaningful here. Each of the three American Casualty Liability Policies provided only professional and personal liability coverage and only to a single nurse. On the other hand, the Travelers Excess Liability Policy provided professional liability coverage as well as general liability coverage to an *entire* hospital, including its doctors and nurses.

American Casualty next contends our analysis and conclusion in *Federal Insurance Co. v. St. Paul Fire & Marine Insurance Co.* support its position that its policies and the Travelers Excess Liability Policy are on the "same level." A careful reading of *Federal Insurance Co.* shows otherwise.

In *Federal Insurance Co.*, the insurance companies shared liability for an underlying settlement against a medical corporation and Dr. Jose Parisi. Three policies provided coverage to Dr. Parisi. *Federal Insurance Co.*, 271 Ill. App. 3d at 1118.

He was insured under a primary policy with Employers Fire Insurance Company that had a limit of $100,000 per claim. This policy had an "other insurance" clause. *Federal Insurance Co.*, 271 Ill. App. 3d at 1118-19.

Dr. Parisi had an excess policy that provided a $1 million per-claim limit " 'in excess of $100,000 [for] each claim [and] $300,000 aggregate of the following policy, *** herein known as the underlying policy: Insurance Company Employers Fund Insurance Company.' " (Emphasis omitted.) *Federal Insurance Co.*, 271 Ill. App. 3d at 1119.

The other insurance clause in the Federal excess policy stated:

> " 'If the named insured has in force other professional liability insurance in excess of the limits of liability of the underlying policy (except insurance purchased to apply in excess of the sum of the limits of liability of the underlying policy and the limits of liability of this policy), the insurance afforded by this policy shall not be applicable for a greater proportion of a claim than the applicable limit of liability stated in this policy bears to the total applicable limit of liability of all valid and collectible excess insurance against such claim.' " *Federal Insurance Co.*, 271 Ill. App. 3d at 1119.

The third policy, issued to the medical corporation and naming Dr. Parisi as an additional insured, provided primary insurance with a limit of $1 million. The policy was issued by St. Paul and had an "other insurance" clause providing for equal or *pro rata* contribution should another policy apply on the same basis. *Federal Insurance Co.*, 271 Ill. App. 3d at 1119-20.

The issue on appeal was whether the St. Paul policy must pay its maximum obligation before coverage by the Federal excess policy was triggered. We concluded, given the facts of that case, the lower court

correctly ordered the Federal and St. Paul policies to pay *pro rata*. *Federal Insurance Co.*, 271 Ill. App. 3d at 1121-23. In deciding the issue, we stated:

"The distinguishing feature, however, present in the instant case *** is that Federal specifically confined its status as an excess carrier only to Employers, not St. Paul and not any other named or generic policy. *** Consequently, Federal's policy must be deemed an excess policy only as to Employers. If Federal had intended to be an excess carrier to other or all primary insurers of Dr. Parisi, Federal could have included such language in its policy. ***

\* \* \*

*** If the Federal policy had the language of the 'other insurance' clause in the policy in *Admiral,* the result might be different." *Federal Insurance Co.*, 271 Ill. App. 3d at 1123.

The other insurance clause in the policy in *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598 (1994), read:

" 'If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this Policy, other than insurance that is in excess of insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.' " *United States Gypsum Co.*, 268 Ill. App. 3d at 653.

The factors that distinguished *Federal Insurance Co.* from *Illinois Emcasco Insurance Co.* are not present here.

First, the Federal excess policy was excess exclusively over the Employers primary insurance policy—in essence, it was an extension of the Employers primary insurance policy. Not so here.

In this case, the Travelers Excess Liability Policy was excess over a self-insured retention of $500,000. Moreover, the endorsement acknowledging the Travelers Primary Liability Policy as underlying insurance stated that this underlying policy was "deemed *a part* of the self insurance plan and retention." (Emphasis added.) Nowhere in the endorsement did it limit coverage of the Travelers Excess Liability Policy to excess over the Travelers Primary Liability Policy.

Second, the "other insurance" clause language in the Travelers Excess Liability Policy is different from the "other insurance" language in the Federal excess policy. The Federal excess policy provided the policy would share liability *pro rata* with any other insurance policy that also provided excess coverage to the Employers policy. However, the "other insurance" provision in the Travelers Excess Liability Policy states that the policy is "excess over any other insurance available to the Insured (*including a policy purchased by an additional insured hereunder*)." (Emphasis added.) Unlike the other insurance

language in the Federal policy, this provision does not contemplate *pro rata* contribution with other applicable insurance. On the contrary, the emphasized language explicitly states the policy is intended to apply only *in excess* of any insurance obtained by additional insureds, such as the nurses.

  Third, we said that if the Federal excess policy had had the language of the "other insurance clause" in *Admiral*,[3] the result might be different. In this case, the Travelers Excess Liability Policy's "other insurance" language is more akin to the "other insurance" clause at issue in *Admiral* than the language in the Federal policy. Like the clause in *Admiral*, the "other insurance" provision in the Travelers Excess Liability Policy explicitly stated it was excess *over* other applicable insurance.

  Construing the Travelers Excess Liability Policy as a whole, we find the policy to be a true excess policy, and not simply an extension of the Travelers Primary Liability Policy. The American Casualty Liability Policies are primary policies with "other insurance" provisions.

  Given the nature of the policies, the Travelers Excess Liability Policy and the American Casualty Liability Policies "cannot be considered on the same level." *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133-34. Instead, the Travelers Excess Liability Policy should be required to contribute only after the limits of the American Casualty Liability Policies are exhausted.

## CONCLUSION

  For the foregoing reasons, we reverse the decision of the trial court and remand for further proceedings consistent with this order.

  Reversed and remanded.

  HOFFMAN and HALL, JJ., concur.

---

[3]Other than our reference in *Federal Insurance Co.* to the "other insurance" provision in *Admiral*, *Admiral* has no bearing on this case.